James W. HAYNES, Plaintiff-Appellant,

v.

Hollis N. ALLEN et al., d/b/a Allen Medical Laboratories, Defendants-Respondents.

No. 34239.

Missouri Court of Appeals,
St. Louis District.

May 23, 1972.

Rehearing Denied June 28, 1972.

William A. Richter, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for plaintiff-appellant.

Vatterott, Shaffar & Dolan, St. Ann, for defendants-respondents.

WEIER, Judge.

Dissolution of a partnership and its consequences is the area of concern in this case. From a judgment limiting plaintiff's recovery to $7,484.83, plaintiff has appealed, contending generally that the trial court misinterpreted the partnership agreement with regard to liquidation and distribution of assets. If plaintiff prevails with his interpretation of the contract, then, by stipulation of the parties made at trial, plaintiff would be entitled to a total of $27,100.43. In addition, plaintiff contends that he is entitled to pre-judgment interest on the full amount commencing January 1, 1967, the date of dissolution.

Dr. James W. Haynes, the plaintiff, is a medical doctor whose specialty has been pathology. In 1955, he was employed by Allen Medical Laboratories, a partnership composed of physicians who engaged in the practice of medicine and, particularly, in the operation of clinical pathological laboratories. Within six months after initial employment he became a partner. Upon admission as a partner, he paid nothing for his interest in the existing laboratory equipment, the accounts receivable, supplies and the established practice, except the sum of $2,500.00, which was stated in the partnership agreement to be his contribution as partnership capital. Under the terms of the agreement, all medical and surgical instruments, laboratory equipment, stock, medicines and medical books which the parties had previously accumulated while associated together, were delivered over to the partnership and thereupon became partnership property. Additional supplies and equipment were subsequently purchased over the years out of partnership funds and they also became partnership property.

In June of 1966, at a partnership meeting, Dr. Haynes became involved in an animated conversation with one of the partners over the productivity of one of the laboratories as it affected partnership income. He left the meeting abruptly and failed to return to any further meetings.

Three were held thereafter. According to Dr. Haynes, he was never notified in advance as to their time or place. The last meeting was on December 14, 1966. A notice was sent to Dr. Haynes at his home, by mail. A cryptic message of one line, it read: "There will be a meeting of the Partnership at my home Wednesday December 14, 1966, at 7:30 P.M. Hollis N. Allen, M.D." This letter was dated December 12, 1966—two days before the meeting. At this meeting all of the partners except Dr. Haynes attended. All those present agreed to dissolve the partnership and expel Dr. Haynes. One of the partners, Dr. William L. Drake, Jr., was delegated the task of notifying Dr. Haynes that he was to be "separated" from the partnership. This notice, signed December 31, 1966, was served on January 2, 1967.

The partnership agreement contained a clause, Article VII, which spelled out in detail the methods to be used to ascertain the value of a partner's interest upon retirement or death. Upon payment of the amount therein determined, the partnership business could be perpetuated in the remaining partners, or in those who desired to continue with its operation. The article that followed, Article VIII, because of its importance in the determination of this lawsuit, is set out verbatim:

## "ARTICLE VIII

### Dissolution

1. Unless dissolved by the retirement or death of a partner, the partnership shall continue until dissolved by agreement of the partners. Upon any such voluntary dissolution by agreement, the affiars (sic) of the partnership shall be liquidated (except that the accounts receivable and laboratory equipment belonging to the partnership shall vest free and clear of any and all claims or charges in the majority group of full partners who are interested in maintaining the laboratory, but in case of a tie, then to the group having the greatest total number of years of seniority in the partnership). Any partner whose last name is "Allen" shall have the right to the continued use of the name of this partnership. The assets of the partnership (excluding the accounts receivable and laboratory equipment) shall first be used to pay or provide for all debts of the partnership, taking into consideration any sums remaining due the estate of any partner who may have died. The remaining assets (excluding the accounts receivable and laboratory equipment) shall be divided according to the proportionate interests of the partners on the basis of their respective pro rata proportion of the income as existed immediately prior to dissolution."

On appeal, Dr. Haynes contends the unambiguous meaning of this clause of the partnership agreement is that all partners must agree to dissolve the partnership before its terms are applicable. Further, that where, as here, the agreement is silent in regard to the consequences of dissolution by less than all the partners, the Uniform Partnership Law (Chapter 358, RSMo 1969, V.A.M.S.) applies and determines the rights of the parties. The other partners likewise maintain the partnership agreement is clear and unambiguous, but their interpretation differs from that of plaintiff. And so, on the one hand, plaintiff asserts that the word "agreement" means unanimous agreement, or agreement of all the partners. But, on the other hand, defendants declare the word means consent of a majority of the partners.

To invoke the formula for distribution set forth in Article VIII, the key words are "upon voluntary dissolution by agreement." "Agreement" is defined: "A coming or knitting together of minds; a coming together in opinion or determination; the coming together in accord of two minds on a given proposition; in law a concord of understanding and intention between two or more parties with respect to the effect upon their relative rights and

duties, of certain past or future facts or performances; the consent of two or more persons concurring respecting the transmission of some property, right, or benefits, with the view of contracting an obligation, a mutual obligation." Black's Law Dictionary, 4th Ed., page 89. It is clear that "agreement" in the above phrase or in the phrase "Agreement of the partners", found in the first line of Article VIII, implies mutuality of consent and forecloses the interpretation of defendants that it means consent or agreement by a number less than all of the partners. Fish v. Fish, Mo.App., 307 S.W.2d 46, 50[4].

The court below, in its memorandum opinion, gave as its reason for interpreting the phrases to call for something less than total accord and thus require distribution under its provisions, the failure of the article to require dissolution by "unanimous" agreement. By the same token, however, we note that the clause did not in plain terms provide for dissolution by "a majority" of the partners. Further, the trial court, to support its interpretation, cited the provisions in Article VIII vesting accounts receivable and laboratory equipment in the majority group of partners, and even in the group having the greatest number of years of seniority in the event of a tie, as being incongruous with an interpretation that "agreement" called for the consent of all. But if one is able to go beyond the plain meaning of "agreement" and add "by majority" to it, the result could be just as unreasonable or absurd, since a majority of four of the seven partners could, under that interpretation, then agree to dissolution and proceed to appropriate for themselves the greater share of the assets of the partnership. The minority of three would then have to be content with being cast out without their fair share, even though disagreeing with the dissolution.

■ In speaking of the characteristics of a partnership, we have said that the power to expel a partner from a firm does not ordinarily exist. F. M. Strickland

Printing & Stationery Co. v. Chenot, Mo. App., 45 S.W.2d 937, 939[6]. Defendants' interpretation of the contract would be contrary to this general principle as well as the meaning of the unmodified word "agreement". Such power in partners must be clearly set forth in the partnership agreement.

■ The partnership was for an indefinite term. It was dissolved by act of the defendants and notice of dissolution served on plaintiff January 2, 1967. Section 358.-310(1) (b), RSMo 1969, V.A.M.S.; Schneider v. Newmark, 359 Mo. 955, 224 S.W.2d 968, 970[1]. In the absence of an agreement to the contrary, Section 358.180, RSMo 1969, V.A.M.S., governs the rights and duties of the partners upon dissolution. Meredith Development Company v. Bennett, Mo.App., 444 S.W.2d 519, 523[5]; Allison v. Dilsaver, Mo.App., 387 S.W.2d 206, 211[4, 5]. But the parties here agreed by stipulation filed in the court below, that, if the plaintiff prevailed, he was to receive judgment for stipulated amounts representing plaintiff's share of his initial capital contribution, the expendable supplies, the accounts receivable and the laboratory equipment, in a total sum of $27,100.43. Based upon this agreed computation and our interpretation of Article VIII of the partnership contract, plaintiff is entitled to this amount. There still remains, however, another issue to be decided before we conclude.

■ Plaintiff also contends he is entitled to pre-judgment interest commencing January 1, 1967, the effective date of dissolution, on the total amount due him from that time, even though his petition did not specifically pray for such interest. Plaintiff did not seek a dissolution of the partnership. No charge of wrongdoing was brought against him or proven. The other partners decided to dissolve and continue with the business of the partnership. They then offered plaintiff only that sum which would be due him under a clause of the partnership agreement which was not ap-

plicable to the facts surrounding the dissolution. This tender did not have to be accepted by him. To stop the running of interest, the tender must be made in full payment of the amount owing. Rules 77.22, 77.23, V.A.M.R.; Wheeler v. Cantwell, Mo.App., 140 S.W.2d 744, 747[4]. The defendants have continued to retain the money due plaintiff commencing January 1, 1967, up to this time. The total amount due was ascertainable and had been fully acknowledged as to amount, as shown by the stipulation of the parties filed in the case. During this period the defendants had the use of the money and plaintiff is entitled to interest for the loss of its use. Clasen v. Moore Brothers Realty Company, Mo.App., 413 S.W.2d 592, 599[8]; Prudential Ins. Co. of America v. Goldsmith, 239 Mo.App. 188, 192 S.W.2d 1, 3 [2–4]. Cf. § 358.180(4), RSMo 1969, V.A.M.S., which recognizes that a claim for interest may be made by a partner, on capital contributed by him, from the date when repayment should be made. So also, in speaking of situations in which interest is allowable in a suit for accounting between partners, the court quoted with approval as one of the grounds, "damages for the detention of a sum of money after it has become due." Scott v. Thompson, Mo., 222 S.W. 115, 131 (quoting Rowley on Partnership, Vol. 1, § 362). The allowance of interest to plaintiff in the case at bar is supported both by the facts and the law.

But does plaintiff have to specifically ask for interest in the prayer of his petition to be entitled to it in the judgment granted him by the court? We think not. The suit was in equity for an accounting. In addition to seeking an accounting and a judgment for the amount found to be due plaintiff, the petition prayed the court "to grant such other and further relief as the court may deem meet and proper in the premises." Such a prayer has been held to authorize a court of equity to allow interest as being within the general purview and scope of the pleadings. Cannon v.

Bingman, Mo.App., 383 S.W.2d 169, 173 [1–3].

The judgment below is reversed and the case remanded, with instructions to enter judgment for plaintiff and against defendants in the sum of $27,100.43, together with interest thereon at the rate of six per centum per annum, commencing January 1, 1967, down to the date the judgment is entered in compliance with our mandate.

BRADY C. J., and DOWD, SMITH and SIMEONE, JJ., concur.