Mary Beth CALL, et al., Respondents,

v.

Joseph Allen HEARD, Appellant.

No. 78455.

Supreme Court of Missouri,
En Banc.

June 25, 1996.

Rehearing Denied Aug. 20, 1996.

Susan Ford Robertson, Columbia, for appellant.

Ronald R. McMillin, Charles J. McPheeters, Jefferson City, for respondents.

1. Respondents have filed a motion objecting to our jurisdiction. Appellant has filed a motion to

LIMBAUGH, Justice.

■ Joseph Heard appeals from a judgment in this court-tried case awarding $9.5 million in compensatory damages and $9.5 million in punitive damages for the wrongful deaths of Richard, Beth, and Daniel Call. Our jurisdiction is based upon Article V, § 3, of the Missouri Constitution, because Heard challenges the validity of a state statute.[1] We affirm in part and reverse in part.

## I.

On June 22, 1993, Appellant Joseph Heard, then 19, purchased beer at Mike's Corner Pocket in Jefferson City using an altered driver's license. After drinking approximately two six-packs, he went to his pickup truck and began driving home along Cole County Route B. About the same time, Richard and Mary Beth Call and their three children, Beth, Daniel, and Heather, left a softball game and began their drive home. Their route took them along Cole County Route B as well, but in the opposite direction of Heard. The two vehicles collided when Heard's truck crossed the center line into the Calls' lane. As a result of the accident, Richard, Beth, and Daniel Call were killed, and Mary Beth and Heather Call were injured.

Heard was arrested and pled guilty to three counts of involuntary manslaughter. He was sentenced to seven years in prison. At all times during the pendency of this case he was incarcerated.

On June 25, 1994, Mary Beth and Heather Call filed suit against Heard for their own injuries and for the wrongful deaths of Richard, Daniel, and Beth Call. The Calls, with notice to defense counsel, but without leave of court, took Heard's deposition on August, 22, 1994. Defense counsel did not attend the deposition, and it was stricken for failure by plaintiffs to obtain leave of court as required by Rule 57.03(a).

The case was set for trial on July 18, 1995. One week before, on July 11, 1995, Heard requested a writ of habeas corpus ad testificandum in order to allow him to testify at the

strike portions of Respondents' brief. We overrule both motions.

trial. The next day the trial court issued the writ. Thereafter, on July 17, 1995, the Department of Corrections, citing § 491.230.2, RSMo 1994, indicated its intention not to release Heard. Then on the day of trial, Heard requested a continuance until he could secure his release or until his videotaped deposition could be obtained. Despite allegations that he would be denied his constitutional rights, the motion was denied.

At trial, the Calls presented evidence that moments before the accident another driver had almost been run off the same road by someone in a truck matching the description of Heard's truck. Evidence was also introduced that Heard crossed the center line, that he was driving while intoxicated, and that he pled guilty to the criminal charges arising from the verdict. Heard called no witnesses, and the only evidence he presented was to read admissions against interest made by Mary Beth Call. The trial court, sitting without a jury, found in favor of the Calls, assessed 100% of the fault to Heard, and further found that Heard's actions warranted the imposition of punitive damages. The court then assessed damages in the following amounts:

Count I (wrongful death of Richard Call):

Compensatory Damages: $2.5 million

Aggravated/Punitive Damages: $2.5 million

Apportioned $2.5 million to each Mary and Heather Call

Count II (wrongful death of Beth Call):

Compensatory Damages: $2.5 million

Aggravated/Punitive Damages: $2.5 million

Apportioned $2.5 million to each Mary and Heather Call

Count III (wrongful death of Daniel Call):

Compensatory Damages: $2.5 million

Aggravated/Punitive Damages: $2.5 million

Apportioned $2.5 million to each Mary and Heather Call

Count V (personal injuries to Heather Call):

Actual Damages: $500,000

Punitive Damages: $500,000

Count VI (personal injuries to Mary Beth Call):

Actual Damages: $1.5 million

Punitive Damages: $1.5 million.

Heard now appeals, alleging as his primary points the following: 1) that § 491.230.2, RSMo 1994, pertaining to the attendance of incarcerated persons at civil proceedings, is unconstitutional; 2) that the imposition of punitive damages violates due process; 3) that Heather Call did not have statutory authority to pursue a claim for the wrongful deaths of her siblings; and 4) that prejudgment interest should not have been awarded.

II.

In relevant part, § 491.230.2, RSMo 1994, states:

No person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party, except in those instances in which the offender is a respondent in a chapter 211 proceeding to terminate parental rights.[2]

■ In three separate points relied on, Heard challenges § 491.230.2, RSMo 1994, as violative of the Missouri Constitution. He cites Article I, § 14 (open access to the courts), Article I, § 12 (writ of habeas corpus shall never be suspended), Article II, § 1 (separation of powers), and Article I, § 10 (due process). He also contends that the statute is unconstitutional under the 14th Amendment of the United States Constitution (due process and equal protection). In evaluating these issues, we are mindful of the rule of construction that statutes are presumed constitutional. *State v. Schleiermacher*, 924 S.W.2d 269, 275 (Mo. banc 1996).

2. The legislature has amended the statute so that it now allows an incarcerated person to attend a civil proceeding if the incarcerated person "is a party to the civil proceeding and the court finds that the offender will be substantially and irreparably prejudiced by his failure to attend a trial on the merits in the civil proceeding." § 491.230.2(2), RSMo Supp.1995.

Initially, we note that Heard failed to present an offer of proof regarding the substance of his testimony. Appellate courts will not guess at what the evidence will show, but are instead bound by what the "cold record" reflects. Without an offer of proof, we cannot ascertain how Heard was prejudiced by the operation of the statute, if at all. For this reason alone, we cannot find that Heard's claims of error warrant reversal.

Heard first claims that the statute prevents him from gaining access to the courts. Certainly, there is no question that a constitutional right to access to the courts exists and that the prison system may not unduly interfere with a prisoner's access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 1494–96, 52 L.Ed.2d 72 (1977). However, this does not mean that a prisoner is entitled to perfect access; a prisoner is entitled, instead, to meaningful access. *Id.* at 823, 97 S.Ct. at 1495–96. For that reason, it does not automatically follow that the right of access to the courts encompasses a right to personally appear at a civil trial. *Fruit v. Norris,* 905 F.2d 1147, 1150 n. 6 (8th Cir.1990); *State ex rel. Kittrell v. Carr,* 878 S.W.2d 859 (Mo.App.1994). Of the dozens of cases, both state and federal, that have addressed this issue, none has ruled otherwise. Jay M. Zitter, Annotation, *State Prisoner's Right to Personally Appear at Civil Trial to which he is a Party–State Court Cases,* 82 A.L.R.4th 1063 (1990) (citing cases). Moreover, it is well-established that constitutionally sufficient access can be afforded by means other than the live presence at trial of the person in question. *See, e.g., State ex rel. Taylor v. Dorsey,* 81 Wash.App. 414, 914 P.2d 773, 777 (1996); *Throndset v. Hawkenson,* 532 N.W.2d 394, 397 (N.D.1995); *In the Interest of C.G.,* 885 P.2d 355, 357 (Colo.App.1994). In Missouri, prisoners can testify either by conventional deposition or by videotaped deposition. Rule 57.07(a)(3)(B). In fact, on a prisoner's request, the trial judge may, in his or her discretion, conduct a bench trial within the prison in cases where the prisoner is a party. § 544.275, RSMo 1994. Given the significant alternatives to a prisoner's live presence at the courthouse, we hold that § 491.230.2 does not deprive a prisoner of meaningful access to the courts.

Heard argues alternatively that the trial judge denied him meaningful access by failing to afford him the alternatives to a personal appearance mentioned above. This claim is more properly couched as an objection to the denial of the day-of-trial motion for continuance. The record shows that Heard had almost thirteen months from the date the case was filed and three months from the date the trial setting was announced to secure a deposition or to request that the trial be held where he was incarcerated. Instead, just one week before trial, Heard requested a writ of habeas corpus which, although granted by the trial judge, was not honored by the Department of Corrections. As stated, after failing to obtain his release pursuant to the writ, he then requested a continuance to take his deposition. A decision to grant a continuance is within the sound discretion of the trial court. *State v. Brown,* 902 S.W.2d 278, 289 (Mo. banc) *cert. denied* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). This Court will not disturb the exercise of that discretion where it is apparent, as here, that the party should have been more diligent in preserving his or her testimony, having had ample time to do so. Although we find no abuse of discretion in this case, we observe that as a general proposition, trial judges should make reasonable and practicable efforts to accommodate the needs of prisoners for alternatives to live testimony.

In the next sub-issue, Heard states that the statute violates both the equal protection and due process clauses in two respects: (1) that the statute unlawfully draws a distinction between prisoners and other types of "legally disabled" persons by denying prisoners access to the courts, while affording access to those other persons; and (2) that the statute acts to deny him the right of access to the courts, which is a fundamental right.

Heard cites no authority that prisoners constitute a suspect class. By all accounts, the status of suspect class in the law of equal protection is reserved for classifications of race, national origin, and illegitimacy. *Mahoney v. Doerhoff Surgical Ser-*

*vices, Inc.,* 807 S.W.2d 503, 512 (Mo. banc 1991). Therefore, § 491.230.2 will survive constitutional attacks so long as it is rationally related to a legitimate state interest. *Id.* In view of the obvious security and administrative concerns involved in transporting prisoners to and from courthouses, we conclude that the statute meets the rational relationship test.

Having already determined that the statute does not deprive Heard of his right to access to the courts, there is no need to revisit the issue in the context of equal protection. Suffice it to say, once again, that the right of access is satisfied by the presence of sufficient alternatives to a personal appearance.

 In his next two points, Heard argues that § 491.230.2, RSMo 1994, is unconstitutional because it suspends the writ of habeas corpus, and, as a result, it also violates the constitutional provision for separation of powers. In taking this position, Heard disregards the fact that the trial judge actually issued a writ of habeas corpus ad testificandum as requested, and that it was the Department of Corrections that refused to honor it. The trial judge, having done all that was asked of him, committed no error. The proper remedy to compel satisfaction of the habeas corpus writ was to proceed against the superintendent either with an action for contempt, *State ex rel. Rudolph v. Ryan,* 327 Mo. 728, 38 S.W.2d 717 (banc 1931), or a petition for writ of mandamus. *See e.g., Murphy v. State,* 873 S.W.2d 231, 232 (Mo. banc 1994) (mandamus can be used to compel Department of Corrections to compute jail time). The failure to pursue these remedies, combined with the lack of an offer of proof, compels us to deny the points without reaching the constitutional question.

### III.

 In the next point of error, Heard challenges the award of punitive damages on the ground that Missouri's procedures for the award and review of punitive damages under the wrongful death statute violate the due process clause. In particular, he claims that in a judge-tried case "no judicial parameters of reasonableness and adequate guidance are afforded." [3]

 As a preliminary matter, the Calls contend that Heard has failed to preserve for appellate review the punitive damages issue raised before us because he failed to present it to the trial court. Generally, constitutional issues must be raised at the earliest opportunity if they are to be preserved for review. *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 639 (Mo.1987). This is necessary in order to prevent surprise to the opposing party and to allow the trial court the opportunity to identify and rule on the issue. *Winston v. Reorganized Sch. Dist. R–2, etc.,* 636 S.W.2d 324, 327 (Mo. banc 1982). The record herein reflects that the issue of punitive damages did not enter the case until the day of trial, at which time the Calls made their initial request for the award of punitive damages. Heard raised his constitutional due process challenge of the award in his motion for new trial. Plaintiffs had the opportunity to respond and the trial court had the opportunity to address the issue; thus the purposes of the rule were met. The due process issue was adequately raised before the trial court; it is therefore proper for this Court to address it.

 On the merits, we begin with the recognition that the Due Process Clause of the 14th Amendment to the United States Constitution imposes limitations upon awards of punitive damages. *Honda Motor Co. v. Oberg,* 512 U.S. 415, ——, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336 (1994). In *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court attempted to articulate those limitations in order to prevent punitive damages from "run[ning] wild." While no "mathematical bright line" exists to determine the constitutionality of a

---

**3.** Heard has not briefed the question of whether the time has come for Missouri to adopt the "clear and convincing" evidence standard for punitive damages. *See Kansas City v. Keene Corp.,* 855 S.W.2d 360 (Mo. banc 1993) (Holstein, J., concurring); and *Menaugh v. Resler Optometry, Inc.,* 799 S.W.2d 71 (Mo. banc 1990) (Robertson, J., concurring). Therefore, we do not reach this issue.

punitive damage award, limitations upon the discretion of the finder of fact and "general concerns of reasonableness ... enter into the constitutional calculus." *Haslip*, 499 U.S. at 18, 111 S.Ct. at 1043. For the purposes of this case, the Due Process Clause requires that adequate standards and controls be in place to prevent an award of punitive damages from becoming an arbitrary deprivation of property. *Haslip*, 499 U.S. at 18–22, 111 S.Ct. at 1043–45.[4]

Although the Supreme Court has not mandated specific standards and controls, it has indicated that in general, common law procedures pass constitutional muster. *Haslip*, 499 U.S. at 15, 111 S.Ct. at 1041–42. As noted in *Haslip:*

> Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable.

*Id.*

In *Haslip*, the Supreme Court examined and approved Alabama's procedures and requirements in upholding a punitive damages award. *Id.* at 19–24, 111 S.Ct. at 1043–47. The jury was instructed that the purpose of punitives is to punish the defendant and to deter the defendant and others from similar conduct in the future. *Id.* at 19, 111 S.Ct. at 1043–44. The trial judge, in reviewing the award, then considered the culpability of the defendant, the desirability of discouraging others from similar conduct, the impact upon the parties, and "other factors, such as the impact on innocent third parties." *Id.* at 20, 111 S.Ct. at 1044. Finally, an appellate court reviewed the award to make sure that it "does 'not exceed an amount that will accomplish society's goals of punishment and deter-

rence.'" *Id.* at 21, 111 S.Ct. at 1045 (quoting *Green Oil Co. v. Hornsby*, 539 So.2d 218, 222 (Ala.1989)). The appellate court's criteria for considering whether the award was excessive were:

> (a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the 'financial position' of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation.

*Haslip*, 499 U.S. at 21–22, 111 S.Ct. at 1045.

In contrast, the Supreme Court struck down a punitive damage award imposed in an Oregon state court because the review procedures were inadequate. *Honda Motor Co. v. Oberg*, 512 U.S. 415, ——, 114 S.Ct. 2331, 2341, 129 L.Ed.2d 336 (1994). Under Oregon law, an appellate court could only reverse a punitive damage award if there was no evidence to support it; in other words, the presence of any evidence to support the award precluded the appellate court from reversing or reducing the award. *Oberg*, 512 U.S. at ——, 114 S.Ct. at 2338. This method of review, according to the Supreme Court, did not provide adequate protection from arbitrary awards. *Id.* at ——, 114 S.Ct. at 2341.

---

4. In *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), and *BMW of North America, Inc. v. Gore*, —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the United States Supreme Court explored the possibility that a punitive damage award that is "grossly excessive" in relation to the state's interest in punishment and deterrence may violate due process despite the presence of adequate controls and standards for imposition and review of the award. —— U.S. at ——–——, 116 S.Ct. at 1604–05. In his briefs, Heard does not rest his due process challenge on an alleged claim of "gross excessiveness," but merely on the alleged absence of adequate controls and standards. We therefore find no reason to discuss *TXO* or *BMW*.

With these cases in mind, we must now determine whether Missouri's procedures, controls, and standards for imposing and reviewing punitive damages in a court-tried case satisfy due process. In this regard, § 537.090, RSMo 1994, provides that in wrongful death cases "the mitigating and aggravating circumstances attending the death may be considered by the trier of facts" in assessing damages. This Court recently explained that aggravating circumstance damages in wrongful death cases are the equivalent of punitive damages and that due process safeguards are required. *Bennett v. Owens–Corning Fiberglas Corp.*, 896 S.W.2d 464, 466 (Mo. banc 1995). In Missouri, punitive damages may be awarded if the defendant "showed complete indifference to or a conscious disregard for the safety of others." *Stojkovic v. Weller*, 802 S.W.2d 152, 155 (Mo. banc 1991). The well-established purpose of punitive damages is to inflict punishment and to serve as an example and a deterrent to similar conduct. *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 660 (Mo. banc 1986). The requirements for the threshold showing of "complete indifference ..." and the purposes of punishment and deterrence are reflected in the mandatory punitive damages instruction, MAI 10.02, which states:

> If you find in favor of plaintiff under Instruction Number ___, and if you believe the conduct of defendant as submitted in Instruction Number ___ showed complete indifference to or conscious disregard for the safety of others, then in addition to any damages to which you may find plaintiff entitled under Instruction Number ___, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

When punitive damages are awarded by a jury, both the trial court, which has the power of remittitur, § 510.263, RSMo 1994, and the appellate court review the award to ensure that it is not an abuse of discretion. Of course, in a judge-tried case, the role of the jury is subsumed into the role of the judge, and the judge performs both functions. On appellate review, an abuse of discretion is established when the punitive damage award is so disproportionate to the factors relevant to the size of the award that it reveals "improper motives or a clear absence of the honest exercise of judgment." *Beggs v. Universal C.I.T. Credit Corporation*, 409 S.W.2d 719, 724 (Mo.1966). In other words, the amount of punitive damages must somehow be related to the wrongful act and the actual or potential injury resulting therefrom, although there is no fixed mathematical relation between the amount of actual damages and the amount of punitive damages awarded. *Id.*

These requirements constitute what *Haslip* calls the "traditional common law approach," which generally is sufficient to satisfy due process. *Haslip*, 499 U.S. at 15, 111 S.Ct. at 1041–42. Under these requirements, punitive damages are limited by the purposes for which they may be imposed, that is, to punish and to deter. These requirements prevent imposition of awards that are arbitrary and, if not present, would violate due process. *Haslip*, 499 U.S. at 19–20, 111 S.Ct. at 1043–45.

To supplement the requirements set out above for imposition of punitive damages, the courts of this state have identified a variety of factors, a nonexclusive list, that may also be considered in determining the propriety of an award. Certainly a critical factor is the degree of malice or outrageousness of the defendant's conduct. *State ex rel. St. Joseph Belt Ry. Co. v. Shain*, 108 S.W.2d 351, 356 (Mo.1937). In addition, aggravating and mitigating circumstances may be considered not only under the wrongful death statute, but in all other cases involving punitive damages. *Beggs*, 409 S.W.2d at 724. Furthermore, evidence of a defendant's financial status is admissible as an indication of the amount of damages necessary to punish the defendant. *Id.* at 724. Among other relevant factors are: the age of the injured party, *State ex rel. St. Joseph Belt Ry. Co.*, 108 S.W.2d at 356; the character of the defendant, *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 662 (Mo.App.1991); and the character of the injured party, *Holcroft v. MKT RR Co.*, 607 S.W.2d 158, 164 (Mo.App.

1980). *See also, Moore v. Missouri–Nebraska Exp., Inc.,* 892 S.W.2d 696, 714 (Mo.App. 1994), for a compilation of factors.

While perhaps not as comprehensive as the Alabama criteria approved in *Haslip,* Missouri's requirements for the imposition of punitive damages, in conjunction with the various factors that may be considered, satisfy the due process concerns expressed by the Supreme Court. In so ruling, we fully address Heard's claim that "no judicial parameters of reasonableness and adequate guidance are afforded." Heard brings no claim that the awards in this case were excessive.

## IV.

For his next point (Point VI in the brief), Heard raises a conglomeration of issues including: (A) Heather Call's authority under the wrongful death statute to bring the actions in Counts II and III for the death of her siblings; (B) the sufficiency of the evidence to support the punitive damage awards; (C) the refusal of the trial court to allow defense attorneys to cross-examine Mary Beth Call about her remarriage; and (D) error in the mathematical calculation of the damages. We will address each issue in turn despite the patent impropriety of joining these issues in a single point of error.

## A.

■ Both Heather Call and her mother, Mary Beth Call, were named party plaintiffs in Counts II and III alleging the wrongful deaths of Beth and Daniel Call, respectively. The trial court assessed damages in the amount of $5 million ($2.5 million compensatory and $2.5 million punitive) for each count. These damages were then apportioned equally between Heather Call and her mother.

Under § 537.080.1, RSMo 1994, however, Heather Call is precluded from participating in Counts II and III. Paragraph (1) of the statute specifies that the spouse or children or parents of the deceased comprise the class of persons who may bring a wrongful death action. Paragraph (2) provides that if no persons in paragraph (1) are entitled to bring an action, then a brother or sister of the deceased may bring the action. In all cases, only one action may be brought against any one defendant for the death of any one person. § 537.080.2, RSMo 1994. Therefore, under the statute, Heather Call could not bring suit for the wrongful deaths of her siblings because her mother, Mary Beth Call, brought the action as the sole class member under paragraph (1).

■ Despite the clear language of the statute, Heard made no objection to Heather Call's participation in her siblings' wrongful death counts until this appeal. The Calls argue that Heard was required to raise the issue of Heather Call's right to participate in those counts "by specific negative averment" as required under Rule 55.13. That rule, however, applies to challenges to a party's capacity to sue, that is, "the right to come into court which exists if one is free of general disability, such as infancy or insanity . . . ." *Earls v. King,* 785 S.W.2d 741, 743 (Mo.App. 1990). There is no question here as to Heather Call's capacity to sue; thus, Rule 55.13 is inapposite.

■ The essence of Heard's contention that Heather Call was statutorily foreclosed from participating in Counts II and III of the wrongful death action is that she failed to state a claim upon which relief can be granted. It is imperative, in order to state a claim, that the plaintiffs both plead and prove that they are authorized to bring an action under the wrongful death statute. This is a component of the claim no less than any other component. As this Court stated long ago:

> A party suing under the [wrongful death] statute . . . must bring himself in his pleading and proof strictly within the statutory requirements necessary to confer the right. Otherwise his petition states no cause of action, and his proof is insufficient to sustain his judgment.

*Nelms v. Bright,* 299 S.W.2d 483, 487 (Mo. banc 1957) (brackets in original), *citing Chandler v. Chicago & Alton Railroad Company,* 251 Mo. 592, 158 S.W. 35, 37 (1913). *See also, Klein v. Abramson,* 513 S.W.2d 714, 716 (Mo.App.1974); *Deming v. Williams,* 321 S.W.2d 720, 723 (Mo.App.1959); *Lynch v. St. Louis Public Service Co.,* 261 S.W.2d 521, 523 (Mo.App.1953).

■ Failure to state a claim is jurisdictional in nature and may be raised at any time. *Commercial Bank of St. Louis Co. v. James*, 658 S.W.2d 17, 21 (Mo. banc 1983); Rule 55.27(g)(2). In this case, because Heather Call could not under any circumstances prove that she had a statutory right to participate in the wrongful death counts for her siblings, she failed to state a claim under those counts.

■ Respondents, in a fall-back position, characterize this lapse as a mere technicality that should not affect the total amount of the awards on Counts II and III. Rather, as they explain, only the apportionment should be reversed, and Mary Beth Call should receive the entire $5 million in compensatory and punitive damages for each count. In making this argument, Respondents necessarily assume that the trial court would have returned damages in the amount of $5 million on each of the counts in question even if Heather Call had not been a party plaintiff. To the contrary, the record does not support that assumption.

Section 537.090, RSMo 1994, sets out the factors to be considered by the fact finder in determining what the damages should be:

> [T]he trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which *those on whose behalf suit may be brought* have been deprived by reason of such death....

(emphasis added). The statute is clear that in determining damages, the fact finder considers losses with reference to the particular persons on whose behalf the suit was brought and the relationship of the deceased with those particular persons. In other words, an element of the total damages is based upon the relationship between the deceased and each individual party to the action.[5]

Naturally, we must presume that the trial court, in determining the damages on Counts II and III, followed the dictates of § 537.090. The trial court, in other words, presumably took into account Heather Call's particular pecuniary losses and personal deprivation in arriving at its determination of $2.5 million compensatory damages on each count. Indeed, the record makes very clear that the trial court must have considered Heather Call's losses with respect to these counts, in light of the fact that the court then went on to apportion the damages, half-and-half, between Heather Call and her mother. This apportionment was undertaken pursuant to § 537.095.3, RSMo 1994, which provides that the trial court shall apportion damages in proportion to the losses suffered by each party entitled to the damages. As stated, however, consideration of any of Heather Call's losses with respect to arriving at a damage figure was inappropriate because she was foreclosed from participating in those counts of the suit. Her loss, her "deprivation," should not have been considered in the total amount of damages.

The damages suffered by Heather Call must be deleted from the total because, based on the record before us, the damages were personal to her and could not have been awarded to anyone else. Consequently, the awards of compensatory damages to Heather Call under Counts II and III were erroneous. The awards of punitive damages to Heather Call, which were based on the awards of compensatory damages and imposed in a one-to-one ratio, were likewise erroneous. Mary Beth Call should be the sole recipient of the total damages remaining—$2.5 million—for each count.

We arrive at this conclusion notwithstanding our decision in *Grothe v. St. Louis–San*

5. In *Sullivan v. Carlisle*, 851 S.W.2d 510, 513 (Mo. banc 1993), this Court noted that Missouri's initial wrongful death statute was of the traditional "Lord Campbell" type, under which damages were "measured by the economic and emotional losses arising out of the disruption *of the survivors' relationship with the deceased."* (em-

phasis added). Although the statute has been substantially altered, the current statute still retains this intrinsic characteristic. For a general discussion of the history of the wrongful death statute and the damages for which it provides, see *Sullivan v. Carlisle*, 851 S.W.2d at 513–14.

*Francisco Railway Co.,* 460 S.W.2d 711 (Mo. 1970). The Calls cite *Grothe* for the proposition that the total damage award on Counts II and III need not be reduced, but only the apportionment altered. *Grothe* involved a constitutional challenge to the trial court's power to apportion an award in a wrongful death case. Essentially, the Court determined that an erroneous apportionment of an award did not prejudice the defendant because his monetary obligation, the total amount of the judgment, would be the same regardless of the eventual apportionment. However, the plaintiffs in *Grothe* were all members of the same class and therefore entitled to participate in the suit, unlike the present case. Thus, in *Grothe* there was no concern that the total damage amount was erroneous due to the inclusion of damages personal to a party who was not entitled to bring suit under the statute.

## B.

██ The second issue raised in this point of error is whether there was sufficient evidence to support the award of punitive damages. Heard argues that the awards were based solely on evidence of intoxication and that such evidence alone cannot justify punitive damages.

██ As stated in part III, punitive damages may be awarded if the defendant "showed complete indifference to or a conscious disregard for the safety of others." *Stojkovic v. Weller,* 802 S.W.2d 152, 155 (Mo. banc 1991). This will be met if it is proved that the defendant knew or had reason to know of the high probability that his actions would result in injury. *Id.* In *Stojkovic,* the Court determined that evidence of the driver's intoxication, plus evidence of erratic driving, would be sufficient to meet the above standard. In this case, as in *Stojkovic,* there is ample evidence of erratic driving, evidence that demonstrates a reckless disregard of consequences. The trial court found that immediately prior to the accident Heard had crossed the center line and ran another car off the road. The accident at issue was caused when Heard's truck crossed the center line into the Calls' lane. In fact, the accident reconstructionist testified that

Heard's truck had gone onto the opposite shoulder and that he was most likely swerving back over to his proper lane when the accident occurred. This evidence, in combination with Heard's intoxication, is sufficient to support an award of punitive damages. *Id.* Punitive damages were not awarded solely on the basis of intoxication as Heard claims. The point is denied.

## C.

██ Heard also takes issue with the trial court's refusal to allow him to cross-examine Mary Beth Call about her remarriage, claiming such evidence should have been considered in mitigation of damages. Although this particular argument was not specifically mentioned in his point relied on, we will consider it since it is at least related to the question of whether the evidence supported the award of damages.

██ Generally evidence relating to remarriage of a plaintiff in a wrongful death case is to be excluded. *Glick v. Allstate Insurance Company,* 435 S.W.2d 17, 23 (Mo. App.1968). Heard, however, maintains that plaintiffs waived any objections to testimony regarding Mary Beth Call's remarriage because plaintiffs "opened the door" by submitting a psychological report regarding Mary Beth Call which mentioned, among other things, that she had found comfort in her remarriage.

██ When an improper subject of inquiry has been voluntarily broached by one party, the other party is permitted to further examine the subject. *Watson v. Landvatter,* 517 S.W.2d 117, 122 (Mo. banc 1974). Assuming that plaintiffs, by offering the psychological report, indeed "broached" the subject of Mary Beth Call's marriage, then arguably Heard should have been allowed to question her further on the subject. However, Heard's offer of proof merely indicated that he would have solicited testimony as to the date of Mary Beth Call's remarriage on April 8, 1995, and the approximate time her relationship began with her current husband, which was during June of 1994. This testimony does little more than establish the fact of the remarriage, and even though such

evidence may be introduced for some other legitimate purpose, it is still not to be considered in the determination of damages. *Glick*, 435 S.W.2d at 23. In any event, Heard has failed to show how he was prejudiced by the exclusion of this evidence, especially since it is far from apparent that the evidence, even if relevant in mitigation of damages, would be of sufficient weight to have affected the amount of damages awarded.

### D.

Finally, Heard notices in a passing sentence that the damages found by the court in the five claims totalled $19 million, but the last paragraph of the judgment states the total judgment as only $18.1 million. Heard fails to explain why a mere mathematical error should be grounds for reversal. It is unnecessary to address this issue further because, in any event, on remand, the trial court must recalculate damages in accordance with this opinion.

### V.

■ Finally, Heard claims that the trial court erred in awarding prejudgment interest in this matter. Prejudgment interest in tort actions is authorized under § 408.040.2, which states as follows:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest ... shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier.

On October 13, 1994, plaintiffs sent by certified mail a demand letter that read in pertinent part as follows:

> Finally, pursuant to § 408.040, RSMo. (1986), please let this letter serve as a settlement demand in the sum of $10 million to resolve all of the wrongful death and personal injury actions arising from this tragedy.... This offer shall be left open for 60 days unless earlier rejected.

The pleadings made no explicit request for prejudgment interest nor was evidence presented on the issue at trial. The trial court, however, while the case was under submission, granted plaintiffs leave to amend their petition to include the allegation of demand and a prayer for prejudgment interest and to reopen the evidence to introduce their demand letter.

Assuming, without deciding, that it was improper to reopen the case to allow amendment of the pleadings, we must decide whether claims for prejudgment interest must be expressly pled in the first place. Heard relies on *Chambers by Abel v. Rice*, 858 S.W.2d 230, 232 (Mo.App.1993), and *Pilley v. K–Mart Corp.*, 849 S.W.2d 293, 299 (Mo.App.1993), in which it was held that a petition must state facts sufficient to authorize the award of prejudgment interest. In reaching this holding in the *Pilley* case, the Court of Appeals, Southern District, cited *Folk v. Countryside Casualty Co.*, 686 S.W.2d 882 (Mo.App.1985), and *Parker v. National Foundation Life Ins. Co.*, 805 S.W.2d 195 (Mo.App.1991), for the proposition that a specific allegation was necessary in order to obtain prejudgment interest under § 408.020, that allows for prejudgment interest in contract actions. The *Pilley* court reasoned that parties seeking prejudgment interest under § 408.040.2 for a tort action should be held to the same pleading requirements as those seeking interest under § 408.020 in a contract action, and therefore specific allegations would be required.

Despite the precedent of *Folk* and *Parker*, it is hardly settled law that § 408.020 requires an express allegation in contract cases. In fact, the greater weight of authority supports the opposite conclusion. See, e.g., *Dierker Assoc., D.C., P.C. v. Gillis*, 859 S.W.2d 737, 746 (Mo.App.1993); *Holtmeier v. Dayani*, 862 S.W.2d 391, 406 (Mo.App.1993); *Addison v. Jester*, 758 S.W.2d 454, 460 (Mo.App.1988); *General Aggregate Corp. v. La-Brayere*, 666 S.W.2d 901, 910 (Mo.App.1984);

*Haynes v. Allen,* 482 S.W.2d 85, 89 (Mo.App. 1972). In all of these cases, a petition that included an open-ended prayer of relief, such as "... and for such other relief as the Court seems just and proper," was a sufficient basis upon which to award prejudgment interest. More recently, the United States District Court, in *Gibson v. Musil,* 844 F.Supp. 1579 (E.D.Mo.1994), while acknowledging *Chambers* and *Pilley,* and the cases on which they rely, held that the pleadings in a tort action need not contain specific allegations or an express prayer for relief because neither is required under § 408.020 or § 408.040.2. *Id.* at 1582.

■ We agree with the reasoning in *Gibson.* The statute contains no pleading requirement; therefore, an open-ended prayer of relief will suffice. In this case, the prayers for each count of the petition call for damages "and for such other and further relief as this court deems just and proper under the circumstances." This language provides a sufficient basis for awarding prejudgment interest.

■ Heard challenges the trial court's award of prejudgment interest on other grounds as well. Without going into detail, Heard argues that the Rules of Civil Procedure prohibit the court from reopening the trial. This is simply incorrect. It is well settled that the trial court has the discretion to reopen the case to allow plaintiff to admit additional evidence. *See, e.g., Page v. Lewis,* 902 S.W.2d 359 (Mo.App.1995).

■ Heard also contends that the Calls' demand letter is legally insufficient to give rise to the right to prejudgment interest because there was no indication within the letter as to how the demand amount was to be allocated between the various claims. *Lester v. Sayles,* 850 S.W.2d 858 (Mo. banc 1993), on which Heard relies, in no way lends support to Heard's contention. In fact, the Court made clear that it was not deciding the necessity of allocating the demand among multiple claims. In this case, now that we are squarely confronted with the issue, we find nothing in the statute that precludes plaintiffs from combining demands on multiple claims into a single sum.

■ In his last point, Heard is correct in his claims that the trial court erred in awarding prejudgment interest from the date of the demand letter. Plaintiffs concede that calculating the interest from that date is erroneous as § 408.040, RSMo 1994, does not allow for prejudgment interest until 60 days after the demand was made. Thus, the judgment must be modified to provide that prejudgment interest runs only from December 12, 1994.

## VI.

On all counts, the judgment of the trial court is reversed to the extent that the awards of prejudgment interest exceeded the amount authorized by law. On Counts II and III, the judgment of the trial court is reversed as to the award of damages to Heather Call only. In all other respects the judgment of the trial court is affirmed. The case is remanded for entry of judgment in accordance with this opinion.

HOLSTEIN, C.J., and BENTON, COVINGTON and WHITE, JJ., concur.

PRICE, J., concurs in part and dissents in part in separate opinion filed.

CHARLES B. BLACKMAR, Senior Judge, concurs in part and dissents in part in separate opinion filed.

ROBERTSON, J., not sitting.

PRICE, Justice, concurring in part and dissenting in part.

I concur with the majority opinion, except part III. I cannot affirm the imposition of a $9.5 million dollar punitive damage award against this defendant, already imprisoned, without any apparent means of support, and already subject to a $9.5 million dollar compensatory damage award.

The facts of this case certainly warrant the imposition of punitive damages. Simply because the imposition of punitive damages are warranted, however, does not mean that they can be assessed in any amount. Recently decided cases from the United States Supreme Court establish that the amount of punitive damages assessed against a defen-

dant must be carefully tailored to the particular facts at hand in accordance with specific standards to assure due process. *BMW of North America, Inc. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336 (1994); *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

Here, it appears that the trial court assumed a one to one relationship between punitive and actual damages would pass constitutional muster. I do not believe that this standard, alone, is sufficient. The record is wholly silent as to why this amount is necessary to further punish the defendant or to deter others from this type of admittedly outrageous conduct.

In contrast to the majority, I believe this issue was sufficiently raised in defendant's general due process challenge and I would remand for reconsideration.

CHARLES B. BLACKMAR, Senior Judge, concurring in part and dissenting in part.

I am of the opinion that the judgment so far departs from the regular and appropriate course of judicial proceedings that I cannot put my stamp of approval on it. I hope that lawyers and judges who come across this case in the future will realize that possibly valid points were not raised in the trial court or preserved for review, because the defendant's original counsel virtually abandoned him and successor counsel, though making diligent efforts, came in only after most of the damage was done.

I concur in the result reached in Count II. Had the defendant given any indication that he had valuable testimony, I believe that it would have been an abuse of discretion for the court to deny him the opportunity to testify by deposition. This is especially so when the court gave the plaintiffs the opportunity to reopen their case to present their claim for prejudgment interest.

I dissent as to the award of actual and punitive damages under Part III. I believe that the defendant, by raising claims about the methodology of determining punitive damages, effectively preserved a claim of excessiveness. I am forced to the conclusion that the trial judge allowed his outrage at the defendant's conduct and his sympathy for the bereaved to color his judgment and overlooked the injunction of sec. 537.090, RSMo 1994, that "damages for grief and bereavement by reason of the death shall not be recoverable." Inasmuch as the trial judge exercised the functions of both court and jury, this Court's review is the only check on his excesses. Because the Court does not reach the issue, I shall not compose an essay on the various factors that deserve consideration. Suffice it to say that the size of the award shocks my conscience to such an extent that I deem it plain error reviewable under Rule 84.13(c). The error taints the award of actual damages, except as to the award of personal injury damages to both respondents. I would solve the problem by vacating the awards of damages for wrongful death and remanding for reconsideration. In the remand order the Court should prescribe some standards for guidance.

I concur with all parts of Part IV of the opinion.

In the view I take it would not be necessary to reach the matters discussed in Part V but, since the Court considers the issue, I cannot fully concur. I agree that there is no need to allocate a settlement offer among the several potential claimants to the unitary award for wrongful death under Sec. 537.080 RSMo 1994. The settlement can come first and the allocation afterwards. I cannot, however, endorse the propriety of a lump sum offer for the claims of plural claimants for damages for their own personal injuries. Such an award poses an ethical problem for plaintiffs' counsel who represent several clients who unite in a single lawsuit, because no judicial machinery is available for allocation. A separate offer for each severable claim should be required.

For the reasons stated I would vacate the monetary portions of the award and would remand the case with directions to reconsid-

er. On remand I would allow the defendant to testify by deposition.