**STATE of Missouri ex rel. STATE OF ILLINOIS and Sherry Lowery, et al., Relators,**

**v.**

**The Honorable Dennis SCHAUMANN, Division 14 Judge of the Circuit Court of the City of St. Louis, 22nd Judicial Circuit.**

No. 69993.

Missouri Court of Appeals, Eastern District, Writ Division Six.

March 26, 1996.

---

Michael Shelton, St. Louis, for relators.

Alan W. Cohen, St. Louis, for respondent.

CRAHAN, Presiding Judge.

The State of Illinois ("State"), acting on behalf of Sherry Lowery ("Mother"), brought an action against Jonathan Nelson ("Nelson") under the Uniform Reciprocal Enforcement of Support Act, §§ 454.010–.360 RSMo 1994[1], ("URESA"), alleging that Nelson was the father of Mother's minor child, J.N. ("Child") and seeking support for Child from Nelson. The action was transferred to Missouri, where Nelson resides, as responding state. Nelson filed a motion to dismiss alleging that Mother failed to comply with the pleading requirements of the Uniform Parentage Act, § 210.817–.852 ("UPA") and, specifically, that Mother had failed to join Child as a necessary party to the action as required by § 210.830. The trial judge ("Respondent") agreed with Nelson. Relators filed this original proceeding in prohibition seeking to prevent Respondent from ordering the addition of the minor child as a party to the underlying URESA action and from dismissing their petition should they fail to do so or otherwise fail to conform the petition to the requirements of the UPA which have been specifically incorporated into URESA. We order that our preliminary writ heretofore issued now be made permanent.

■ Section § 210.830 of the UPA requires that Child be made a party to a paternity action filed pursuant to the UPA.

Relators contend that the trial court erred in finding § 210.830 applicable to the instant action when URESA itself contains no such requirement. They argue that such an incorporation contravenes the legislative intent behind URESA and is not warranted by either the plain meaning of the statute or relevant case law. We agree.

The purposes of URESA are to improve and extend the enforcement of the duties of child support and make the laws regarding this enforcement uniform. § 454.010. URESA allows a party to whom support is owed or any state agency providing public aid to those parties to bring an action to enforce an obligation of support against an out-of-state obligor. §§ 454.020(8), 454.080. The statute also provides that if the obligor raises the defense that he is not the father of the child in question, the court may then adjudicate the issue of paternity. § 454.200.

Prior to July 1, 1994, URESA was silent on what rules and procedures were to be applied in such an adjudication. In *Michigan Dep't of Social Servs. ex rel. D.H. v. K.S.*, 875 S.W.2d 597, 600 (Mo.App.1994), this court held that the issue of paternity in an interstate URESA action shall be adjudicated according to the procedures set forth in the UPA as adopted by the Missouri legislature. The court noted that URESA contained no procedures for determining paternity while UPA established a comprehensive statutory scheme for doing so. *Id.* at 599. The court also noted that it was well established that the UPA was the exclusive means for determining paternity in Missouri and that to hold its provisions inapplicable in a paternity proceeding pursuant to a URESA action would frustrate the purpose of the UPA and deprive litigants of their rights thereunder. *Id.* at 600; *P.L.K. v. D.R.K.*, 852 S.W.2d 366, 368 (Mo.App.1993).

Relators argue that continued adherence to *Michigan DSS*[2] would contradict the in-

---

1. Unless otherwise noted, all further statutory references are to RSMo 1994.

2. We note that neither *Michigan DSS* nor *P.L.K. v. D.R.K.* involved the issue of whether the minor child must be joined as a party. By its express terms, the UPA only requires that the child be made a party to an action "commenced under

sections 210.817 to 210.852,"—*i.e.*, the UPA. § 210.830. Whether, in view of this restrictive language, this particular procedural requirement of the UPA would have been incorporated into URESA actions pursuant to *Michigan DSS* has not been decided and, in view of our interpreta-

tent of the legislature as demonstrated by an amendment to § 454.200 of URESA which was passed but had not yet become effective when *Michigan DSS* was decided. This amendment added a new subsection to § 454.200 which provides:

> 4. In any proceeding under sections 454.010 to 454.360 (URESA) in which paternity is at issue, the provisions of sections 210.822 and 210.834 RSMo, shall apply.

Sections 210.822 and 210.834 are provisions of the UPA which *inter alia* establish relevant presumptions and burdens of proof in paternity actions. Additionally, they authorize and detail the blood testing procedures to be used to resolve paternity claims. Significantly, neither §§ 210.822 nor 210.834 contain any requirement that the child be made a party to the proceeding. Although § 210.830 does contain such a requirement for paternity actions brought pursuant to the UPA, that section was not specified in § 454.200.4 as one of the sections to be followed in determining paternity in a URESA action. Thus, the issue presented is whether the legislature intended to require that the child be made a party to URESA actions adjudicating the issue of paternity when it incorporated other procedural requirements of the UPA, but not that one, into URESA.

 In construing laws, the primary rule is to ascertain the legislative intent from the words used, considering the words in their plain and ordinary meaning. *Killion v. Bank Midwest, N.A.*, 886 S.W.2d 29, 32 (Mo. App.1994). In general, the express mention of one thing implies the exclusion of another. *Harrison v. MFA Mutual Ins. Co.*, 607 S.W.2d 137, 146 (Mo. banc 1980). Here, the legislature chose to expressly mention §§ 210.882 and 210.834. This implies that the incorporation of § 210.830, with its requirement that the child be made a party, was considered and rejected. Had the legislature wished to adopt § 210.830 it could have expressly done so. Given that it did not, we can only conclude that it is the intent of the legislature that a child not be deemed a necessary party to an adjudication of paternity in a URESA action.

Further, wholly aside from the legislature's apparent intent based on the wording of § 454.200.4, there are substantial reasons why the legislature might not wish to require a child to be made a party to a URESA action. In many instances, as in the present case, the real party in interest in a URESA action is the state in which the child resides, which is expending or has expended public funds for support of a resident minor child due to the failure of the natural parent to satisfy support obligations. The plaintiff(s), which may or may not include the parent receiving support, is represented by the local prosecutor, who likely will have no occasion to meet the child or know anything about the child's circumstances other than the receipt of public assistance. Although non-paternity may be raised as a defense, the plaintiff's concern is really about money, not about obtaining a legally binding declaration of paternity in behalf of the child. If the child is made a party, the child could be bound by the determination of paternity even though the determination of paternity may not be the paramount concern of the prosecutor trying the case. Appointment of a guardian ad litem to protect the child's interests could frustrate the expeditious collection of child support that is an acknowledged purpose of URESA.

On the other hand, if the child is not made a party, the URESA proceeding cannot bind the child. Thus, there is no risk that an adverse determination as to the paternity of the child would foreclose reconsideration of the issue in a proper proceeding where the interests of the child are accorded full protection. The only risk of an incorrect adverse determination on the issue of paternity would be the plaintiff state's failure to recoup an expenditure of public funds. Because the interest at stake would be purely financial, streamlined or bulk procedures which typify URESA actions could not impinge upon the child's best interests. In contrast, UPA actions, which may entail custody issues as well as paternity and support issues, necessarily invoke consideration of the child's best inter-

tion of the amendment to § 454.200, need not be decided in this case.

ests, thus providing the rationale for requiring joinder of the child in such proceedings.

■ Respondent contends that such a rule would effectively create two separate methods for establishing paternity: UPA actions which require the child to be a party and URESA actions which do not. Respondent maintains that this disparity results in two significant problems. The first is a conflict with the express policy of the UPA and its subsequent interpretation by this court. The UPA was adopted with the general purpose of making uniform the law in respect to paternity. *Michigan DSS*, 875 S.W.2d at 600; *Poole Truck Lines, Inc. v. Coates*, 833 S.W.2d 876, 877 (Mo.App.1992); § 210.850. The UPA has also been held to be the exclusive means for establishing paternity in Missouri. *Michigan DSS*, 875 S.W.2d at 600; *P.L.K. v. D.R.K.*, 852 S.W.2d 366, 368 (Mo. App.1993); *but see In the Matter of Nocita*, 914 S.W.2d 358 (Mo. banc 1996) (legislature did not intend to require the use of UPA provisions for adjudicating paternity in probate cases).

■ Although *Michigan DSS* and *P.L.K. v. D.R.K.* accurately reflected the state of the law and the presumed intent of the legislature as it existed prior to the addition of § 454.200.4 the issue is whether this revision demonstrates a different intent. In our view, by adopting only a portion of the UPA procedures into URESA, it is now clear that the legislature no longer intends for the UPA to be the exclusive procedure for adjudication of paternity issues. Any disparities between the UPA and URESA procedures must be presumed to have been contemplated and accepted by the legislature.

Respondent next alleges that a finding that Child need not be made a party to URESA actions would result in an equal protection violation. Alleged fathers whose children resided out of state would be subject to a URESA action while fathers whose alleged children remain instate would only be subject to UPA actions. Therefore, Respondent concludes that the former would be unfairly deprived of the procedural benefits of the UPA which the latter enjoy.

In support of this argument, Respondent relies on *State ex. rel. Dep't of Social Services v. Wright*, 736 S.W.2d 84 (Tenn.1987), wherein the Tennessee Supreme Court found that Tennessee's version of URESA violated an accused father's equal protection rights. This case is inapposite. The Tennessee version of URESA imposed the burden of proving innocence on an alleged father whereas its version of the UPA placed the opposite burden on the accuser. An alleged father's burden of proof would therefore depend on whether his alleged child resided in Tennessee or another state.

■ Such a disparity does not exist under the Missouri statutes. Section 454.200.4 of URESA expressly incorporates §§ 210.822 and 210.834 of the UPA. Section 210.822 establishes the relevant presumptions and burdens of proof when paternity is at issue. An alleged father in Missouri faces the same burden of proof regardless of the residence of his alleged child.

■ Respondent also argues that URESA unfairly discriminates against alleged fathers as it allows an action for child support in the state where he resides but where the court has no jurisdiction to decide custody issues. This would force an alleged father to defend against the child support action in his home state but adjudicate custody issues in the state where child resides. The same contention was addressed in *Brown v. State*, 808 S.W.2d 628 (Tex.App. Austin 1991). There the court found that because the state with the closest connection to the child has the greatest access to information concerning the child's welfare, the above disparity is reasonable and has a fair and substantial relation to the objectives of the act. We find this reasoning persuasive. URESA is designed to expedite the collection of child support across interstate lines. The drafters of URESA did not want URESA proceedings to be complicated by visitation issues. 808 S.W.2d at 632, citing ABA Center on Children and the Law, *Interstate Child Support Remedies*, Ch. 12, § III(B), 234 (M.C. Haynes with G.D. Dodson eds. 1989). Accordingly, the limitation of URESA to paternity and support issues is inherent in the purpose of the statute. We find Respon-

dent's discrimination and equal protection claims to be without merit.

We therefore order the preliminary writ heretofore issued be made permanent and direct Respondent to refrain from ordering that the underlying petition be amended to add the minor child as a party or to otherwise comply with requirements of the UPA not specifically incorporated into URESA.

AHRENS and HOFF, JJ., concur.