**STATE OF WASHINGTON ex rel. Lisa Kay LEWIS, Respondent,**

v.

**Dennis COLLIS, Appellant.**

No. WD 54126.

Missouri Court of Appeals, Western District.

Submitted Sept. 19, 1997.

Decided Feb. 10, 1998.

Dennis Collis, pro se.

Carolyn H. Kerr, Jefferson City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

## PER CURIAM.

Dennis Collis appeals a judgment finding that he is the natural father of a minor child, T.J.P., born in Missouri on November 20, 1986. Collis contends that the trial court erred by ordering him to pay the costs of blood tests, by failing to make the child a party to the action, by failing to appoint a guardian ad litem and by failing to find that his parental rights had been terminated. Collis, who is presently incarcerated in the Missouri Department of Corrections, also contends that the trial court erred in conducting a hearing without his presence and without appointing him counsel. The judgment is affirmed.

On April 26, 1996, the State of Washington, acting on behalf of Lisa Kay Lewis, filed an action in the circuit court of Randolph County, Missouri, seeking to establish paternity and to establish an order for child support, medical coverage and other costs. The petition alleged, *inter alia*, that Collis "should be ordered to pay other costs: *GENETIC TESTS in the amount of UNKNOWN*." A motion for blood testing was filed on behalf of the State of Washington by the office of the prosecuting attorney. Collis filed a motion to dismiss on May 2, 1996, alleging that the State of Washington did not have personal jurisdiction over him and that Randolph County lacked subject matter jurisdiction. His motion to dismiss was denied.

The petition filed by the State of Washington alleged that Collis was the father of T.J.P., born November 20, 1986. The mother of the child, Lisa Kay Lewis, resided in Pierce County, Washington. She and Collis had never been married to each other. Col-

lis did not ask to appear personally, nor did he retain counsel or ask that counsel be appointed. The trial court granted the State of Washington's motion to order blood tests. These tests showed that Collis could not be excluded as the father of T.J.P. The probability of paternity was reported to be 99.96%. The State of Washington submitted an affidavit stating that $261.00 had been spent in obtaining the blood tests.

On February 19, 1997, the trial court entered an order finding that Collis was the father of T.J.P. The costs of the action, including the $261.00 for blood tests, were taxed to Collis. The court found that Collis owed a duty of support for the child but, because Collis was incarcerated, the court dismissed the claim for an order of child support without prejudice. Collis appeals the judgment.

In his first point, Collis contends that the trial court erred in ordering him to pay the costs for blood testing in the sum of $261.00. He claims that this judgment granted relief beyond that submitted in the pleadings and that no statute authorizes the assessment of costs against him. Collis claims that the affidavit submitted by the State of Washington as to the cost of the pleadings could not be considered as evidence. Collis further claims that it was "totally irrational" for the trial court to assess costs against him because the court knew that he was incarcerated and had no money to pay for the costs of the tests. Collis deems the tests to be "totally unnecessary" because he has never denied that he was the father of T.J.P.

Initially, we note that while Collis never denied that he was the father of T.J.P., he never admitted as much, nor had there been a prior determination on the issue. T.J.P.'s birth certificate does not list a father. Collis' letter to the trial court was written after blood had been taken from him for testing. Collis' motion to dismiss states that he has never been adjudged to be the father of any of Lisa Kay Lewis' children.

We also note that Collis' claim that the trial court knew he had no money to pay costs in the action is also without merit.

Although the court stated in its judgment that Collis was incarcerated, there is nothing in the record that shows that the trial court was aware of Collis' actual financial condition. Collis did write a letter to the trial judge indicating that he made about $30.00 a month from his job in the Correctional Center. He did not, however, submit anything to the court showing a lack of other resources. Collis' motion to proceed *in forma pauperis* was not filed until March 21, 1997, nearly a month after the judgment.

Section 514.060, RSMo 1994 provides: "In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." Similarly, Rule 77.01 provides: "In civil actions, the party prevailing shall recover his costs against the other party, unless otherwise provided in these rules or by law." The State of Washington requested the establishment of T.J.P.'s paternity. The trial court found Collis to be T.J.P.'s father. The State of Washington prevailed upon this issue. Its other claims, for child support, reimbursement of aid, and medical insurance were dismissed without prejudice due to Collis' incarceration. The State of Washington did request costs in its petition. It asked that Collis "should be ordered to pay other costs: *GENETIC TESTS in the amount of UNKNOWN.*" Section 454.150, RSMo 1994 states, in pertinent part:

> A responding court shall not require the payment of a filing fee or other costs from the obligee, but it may direct that all fees and costs requested by the initiating court and incurred in this state when acting as a responding state, including fees for the filing of pleadings, service of process, seizure of property, stenographic or duplicating service supplied to the obligor, be paid in whole or in part by the obligor or by the appropriate county of the initiating state.

The costs of the blood tests were shown to be a cost of the initiating state, in this case Washington. The State of Washington properly submitted an affidavit showing that it had expended the sum of $261.00 for paternity testing. This cost, along with other costs

of the action were taxed to Collis. There is nothing improper in the trial court's action.

We also note that it appears that this appeal was taken from the judgment awarding costs before any costs were taxed. Although we could decline to exercise jurisdiction based on the ground of lack of finality, *See In Interest of J.P.*, 947 S.W.2d 442, 447 (Mo.App.1997), we address this issue in the interest of judicial economy. Point I is denied.

In Point II, Collis contends that the trial court erred in finding that he was the natural father of T.J.P. because: (1) the child was not a party to the action; (2) the court failed to appoint a guardian ad litem for the child; and (3) his parental rights were effectively terminated by the child's mother and the DFS.

Collis cites *Michigan Dep't. of Soc. Servs. ex rel. D.H. v. K.S.*, 875 S.W.2d 597, 600 (Mo.App.1994) for the proposition that "the issue of paternity in an interstate URESA action shall be determined according to the procedures set forth in the UPA as adopted by Missouri Legislature." Section 210.830 of the Uniform Parentage Act ("UPA"), § 210.817 et seq., RSMo 1994, requires that a child be made a party to any action commenced under § 210.817 to § 210.852. Collis cites other cases that hold that the child should be joined as a party in actions seeking to adjudicate that child's paternity.

The action in the instant case was not brought under the auspices of the UPA, however. The action brought against Collis was brought under the auspices of the Uniform Reciprocal Enforcement of Support Act ("URESA"), §§ 454.010—.360, RSMo 1994. In 1996, the Missouri Legislature passed §§ 454.850—.997, the Uniform Interstate Family Support Act ("UIFSA"). At the same time, § 454.360, RSMo 1994, was amended to provide, "In all cases filed by Missouri or received by Missouri under the provisions of the uniform reciprocal enforcement of support act, sections 454.010 to 454.360, prior to January 1, 1997, the provisions of the uniform reciprocal enforcement of support act, sections 454.010 to 454.360, shall continue to apply." This action was

filed on April 26, 1996 and thus, URESA applies.

*Michigan Dep't. of Soc. Servs.*, cited by Collis in support of his contention that the child should be made a party to this action, did indeed hold that the issue of paternity in a URESA action should be adjudicated under the procedures set forth in the UPA. *Michigan Dep't. of Soc. Servs.*, 875 S.W.2d at 600. This holding was based in part on the fact that URESA had no procedures for determining paternity, but that the UPA had a comprehensive statutory scheme for doing so. *Id.* at 599. In 1994, the legislature passed an amendment to § 454.200 of URESA providing, in a new subsection, that where paternity is at issue in a URESA action, sections 210.822 and 210.834 should apply. § 454.200, RSMo 1994. Sections 210,-822 and .834 relate to blood testing, presumptions and burdens of proof in paternity adjudications. But neither statute includes a requirement that the child be made a party to the proceeding. Although § 210.830 does contain such a requirement for paternity actions brought pursuant to the UPA, that section was not specified in § 454.200.4 as one of the sections to be followed in determining paternity in a URESA action. The amendment was not in effect when *Michigan Dep't. of Soc. Servs.* was decided. *State ex rel. State of Illinois v. Schaumann*, 918 S.W.2d 393, 395–96 (Mo.App.1996). The court in *Schaumann* addressed the identical issue that Collis presents for our review in the instant action—whether a child must be joined as a party in an URESA action. In that case the State of Illinois, acting on behalf of the mother of a child, brought an action against a putative father under URESA. The action was transferred to Missouri, where the putative father resided. The father sought to dismiss the action because the child had not been joined as a party. The court in *Schaumann* concluded that the "it is the intent of the legislature that a child not be deemed a necessary party in a URESA action." *Id.* at 396. The court reasoned:

> [T]here are substantial reasons why the legislature might not wish to require a child to be made a party to a URESA action. In many instances, as in the present case, the real party in interest in a

URESA action is the state in which the child resides, which is expending or has expended public funds for support of a resident minor child due to the failure of the natural parent to satisfy support obligations. The plaintiff(s), which may or may not include the parent receiving support, is represented by the local prosecutor, who likely will have no occasion to meet the child or know anything about the child's circumstances other than the receipt of public assistance. Although nonpaternity may be raised as a defense, the plaintiff's concern is really about money, not about obtaining a legally binding declaration of paternity in behalf of the child. If the child is made a party, the child could be bound by the determination of paternity even though the determination of paternity may not be the paramount concern of the prosecutor trying the case. Appointment of a guardian ad litem to protect the child's interests could frustrate the expeditious collection of child support that is an acknowledged purpose of URESA.

*Id.* We conclude that *Schaumann* governs this case, and that URESA does not require that the child in this action, T.J.P., be joined as a party. Because T.J.P. was not a party defendant, there is no reason for a guardian ad litem to be appointed. *See State ex rel. O.H. v. J.F.P.*, 891 S.W.2d 856, 860 (Mo.App. 1995).

■ Collis also alleges that the court erred in finding that he was the father of T.J.P. because the mother of the child and the DFS effectively terminated his parental rights. There is nothing in the record to indicate that this claim was ever presented to the trial court. Collis, in his brief, alleges that in 1987 the DFS took custody of the child after his mother had been committed. Collis claims that the DFS would not let him care for the child and that he could learn nothing about the child's whereabouts for months. He also alleges that when he did find the child and his mother, the mother told him to stay away. Thereafter, mother moved to the State of Washington. Collis claims that he voluntarily terminated his own parental rights to the child because he did not go to court to gain custody of the child.

He contends that his voluntary termination of his rights is demonstrated by "his disinterest, lack of commitment to child, including his lack of financial support, his failure to visit, [and] his failure to be physically available to the child." While these factors might support the termination of Collis' parental rights pursuant to proper procedure, they do not constitute a unilateral termination of those rights. Missouri does not recognize these actions as effective to voluntarily terminate parental rights. *See In Interest of R.A.S.*, 826 S.W.2d 397, 399 (Mo.App.1992).

■ There is nothing in the record indicating that Collis' parental rights have been the subject of any judicial determination. Section 211.447.2, RSMo 1994, provides that the juvenile court may terminate the rights of a parent if it finds that such termination would be in the best interests of the child and clear, cogent and convincing evidence is adduced that either (1) the child has been abandoned, (2) the child has been adjudicated neglected or abused or (3) the child has been under the jurisdiction of the juvenile court for one year and that the conditions that lead to the court assuming jurisdiction persist and there is little likelihood that the conditions will be remedied at an early date. Because of the "awesome power" the State has to sever a parent-child relationship, strict and literal compliance with the statutory authority is necessary. *In Interest of B.R.S.*, 937 S.W.2d 773, 774 (Mo.App.1997). The alleged actions of the DFS and the child's mother did not terminate Collis' rights as they did not follow established statutory procedure.

Nor can Collis decide to voluntarily terminate his parental duties and obligations unilaterally. Section 211.444.1, RSMo 1994, provides for consensual termination if such termination is found to be in the best interests of the child and the parent has consented to the termination in writing. There is no evidence of such termination in the record. Collis' abandonment of the child, his disinterest and his failure to support the child would support the termination of his parental rights. However, Collis' duty to support his child has never been legally terminated. He cannot use his actions to support the contention that he does not owe a duty of support

to T.J.P. *See R.A.S.*, 826 S.W.2d at 399. Point II is denied.

■ In Point III, Collis argues that he was denied due process of law and a fair hearing because the trial court held the hearing without his presence and because he was not appointed counsel. Collis claims that he does not know anything about the law and that an attorney should have been appointed to help him.

■ In *Call v. Heard*, 925 S.W.2d 840, 846 (Mo. banc 1996), the Missouri Supreme Court observed that there is a constitutional right of access to the courts. However, this right of access is not a right to perfect access; constitutionally sufficient access can be afforded by means other than personal appearance. *Id.* The right of access does not automatically encompass a right to be present in person at trial. *Id.*

Section 491.230.2, RSMo 1994, prohibits the appearance and attendance at a civil proceeding of a person detained in a correctional facility in the absence of certain exceptions. That section states, in pertinent part:

No person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party, except in those instances in which the offender is a respondent in a chapter 211 proceeding to terminate parental rights.

The statute was amended in 1995 to permit an inmate to attend civil proceedings where, "[t]he offender is a party to the civil proceeding and the court finds that the offender will be substantially and irreparably prejudiced by his failure to attend a trial on the merits in the civil proceeding." § 491.230.2(2), RSMo. Supp.1997.

■ There is nothing in the record to indicate that Collis ever applied to the trial court for an order directing his attendance at the hearing. Collis did not ask the trial court to find that he would be "substantially and irreparably prejudiced" by his failure to attend the hearing. Collis had notice of the case and the relevant dates. He filed a motion to dismiss in the matter. He also wrote the court a letter informing the court

of his incarceration and generally detailing some of the history he shared with the child and the mother. He did not petition the court to be present at the hearing. He did not ask the court to appoint an attorney. The court does not have a duty *sua sponte* to order Collis' appearance. *State v. Scott*, 933 S.W.2d 884, 887 (Mo.App.1996). Collis does not demonstrate that he did not have access to adequate alternatives. Collis, in choosing not to procure counsel, effectively decided to represent himself. Indeed, he filed a motion to dismiss the action. He is held to the same standard as a licensed attorney. *Mills v. Mills*, 939 S.W.2d 72, 74 (Mo.App.1997).

Even had Collis asked the court to appoint counsel, we remind Collis that he was not entitled, as a matter of right, to the appointment of counsel. "[P]arty litigants to civil proceedings have no constitutional or statutory right to the appointment of counsel." *Christiansen v. Missouri State Bd. of Accountancy*, 764 S.W.2d 952, 954 (Mo.App. 1988); *see also Fitzpatrick v. Hoehn*, 746 S.W.2d 652, 654 (Mo.App.1988) (Missouri has no rule or statute requiring the court to appoint counsel to indigent civil litigants). Collis did not attempt to prove his indigency, nor did he make any objection to proceeding without counsel. No proof of Collis' indigency appears in the record until after the judgment, when Collis filed for leave to proceed *in forma pauperis* for the purposes of appeal. Point III is denied.

Judgment is affirmed.

All concur.