Nancy Lin Asheton BLAIR,
Respondent,

v.

William Jeremy BLAIR, Appellant.

No. WD 62929.

Missouri Court of Appeals,
Western District.

Nov. 9, 2004.

Troy L. Daugherty, Kansas City, MO, for appellant.

James D. Boggs, Kansas City, MO, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge, and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

William Jerry Blair (Husband) appeals from a judgment entered in the Circuit Court of Platte County denying his petition for annulment of his marriage to Nancy Blair [1] (Wife). For the following reasons, we affirm.

In July 1976, Husband and Wife had sexual intercourse on one occasion after having worked together for a couple of years. At that time, Wife was married to Jim Farra and was also involved in a long-standing sexual relationship with Sam Kelly.

Subsequently, Wife gave birth to a son, Devin, on April 26, 1977. Husband visited Wife in the hospital shortly after Devin's birth, but did not discuss the paternity of

---

1. In the trial court's decree dissolving Husband and Wife's marriage, the court granted Wife's request that her name be changed from Nancy Blair back to Nancy Asheton.

the child with her and had no further contact with Wife until 1979.

In January 1979, Wife contacted Husband, told him that he was Devin's father, and asked whether he had any history of disease in his family that might affect Devin later in life. Husband met with Wife and Devin, and he resumed a sexual relationship with Wife a few days later. In March 1979, Wife separated from Mr. Farra and filed a petition for dissolution of that marriage. Subsequently, Wife became pregnant with Husband's child, and on March 13, 1980, Wife gave birth to their daughter, Oralin.

Wife's marriage to Mr. Farra was dissolved in December 1980. Several days after her divorce from Mr. Farra became final, Husband and Wife were married on December 22, 1980. Husband later adopted both Devin and Oralin.

On November 20, 2001, Wife filed a petition for dissolution of her marriage to Husband. Husband filed his answer and cross-petition on December 26, 2001.

On April 11, 2002, Husband filed an amended answer and cross-petition requesting that the marriage be annulled. In support of his annulment claim, Husband averred that Wife had fraudulently represented to him before their marriage that he was Devin's father and had thereby induced him to marry her. Subsequent testing proved that Husband was indeed not Devin's father and that he was the son of Sam Kelly.

The trial court heard the matter on November 25, 2002. On January 8, 2003, the trial court entered its judgment denying Husband's petition for an annulment and dissolving the marriage between Husband and Wife. Husband filed a motion for new trial on February 5, 2003. On May 5, 2003, the trial court denied Husband's motion for new trial and entered its Amended Judgment and Decree of Dissolution of Marriage.

In its amended judgment, like the initial judgment, the trial court denied Husband's request for an annulment. In support of its denial of an annulment, the court found: (1) that Wife had believed that Devin was Husband's son during their courtship and at the time of marriage; (2) that Husband would have married Wife even if he had known the representation to be false and that the representation was not material to his decision to marry her; (3) that Husband did not detrimentally rely upon Wife's statement; (4) that Wife did not intend for her representation about Devin's paternity to be relied upon by Husband; (5) that even if the marriage had been the result of a misrepresentation related to Devin's paternity, Husband failed to prove any damages, actual or punitive, resulting from the alleged misrepresentation; (6) that Husband had "unclean hands" sufficient to deny equitable relief because Husband had fraudulently represented to Wife that he loved her prior to marriage; and (7) Husband was precluded from equitable relief because of the doctrine of laches based upon the fact that Husband failed to take any action toward the paternity of Devin, even though at times he questioned Devin's paternity. Husband brings five points on appeal challenging the trial court's denial of his petition for annulment.

This Court's standard of review in any court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] *Riverside–Quindaro Bend*

---

**2.** Appellant cites to *Gross v. Gross*, 96 Mo. App. 486, 70 S.W. 393 (E.D.1902), and *Marre v. Marre*, 184 Mo.App. 198, 168 S.W. 636

(E.D.1914), for the proposition that this court's review of an annulment action is essentially *de novo*, allowing this court to review

*Levee Dist. v. Missouri Am. Water Co.,* 117 S.W.3d 140, 146 (Mo.App. W.D.2003). "The judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo. App. W.D.2002) (citing *Murphy,* 536 S.W.2d at 32). In making these determinations, this Court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Stuckmeyer v. Stuckmeyer,* 117 S.W.3d 687, 690 (Mo.App. E.D.2003).

■■■ In reviewing a court-tried case, "[t]his court's primary concern is 'with the correctness of the trial court's result, not the route taken by the trial court to reach that result.'" *Eckhoff,* 71 S.W.3d at 622 (quoting *Business Men's Assurance Co. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999)). "Therefore, this court will affirm the judgment if it is 'cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient.'" *Id.* (quoting *Graham,* 984 S.W.2d at 506). Accordingly, we will affirm the trial court's decision to deny Husband's request for an annulment if that decision was proper for any of the reasons set forth by the court or if it was proper for any reason.

■■■ "The annulment of a marriage voids the marriage *ab initio.*" *Eyerman v. Thias,* 760 S.W.2d 187, 189 (Mo.App. E.D.1988). "In the eyes of the law it is as if the marriage never existed." *Id.* "[A]nnulment of marriage is the exception and not the rule, and must be granted only upon extraordinary facts." *Woy v. Woy,* 737 S.W.2d 769, 774 (Mo.App. W.D.1987). "[T]he burden of proving the invalidity of a marriage rests upon him who asserts such invalidity, and a marriage will not be declared invalid except upon clear, cogent and convincing proof." [3] *In re Marriage of Burnside,* 777 S.W.2d 660, 664 (Mo.App. S.D.1989).

■■■ As grounds for granting an annulment, Husband asserted that Wife perpetrated a fraud upon him regarding Devin's paternity. In order to establish fraud, Husband was required to plead and prove the following elements: (1) a representation by Wife; (2) its falsity; (3) its materiality; (4) Wife's knowledge of its falsity or ignorance of its truth; (5) Wife's

both the facts and the law. Husband fails to note that the standard of review for equitable actions has evolved in the case law over the past century. Under present case law, review of a court-tried equity action is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Droz v. Trump,* 965 S.W.2d 436, 440 (Mo.App. W.D.1998); *Pelligreen v. Wood,* 111 S.W.3d 446, 450 (Mo.App. E.D.2003); *Asbury v. Crawford Elec. Co-op., Inc.,* 51 S.W.3d 152, 156 (Mo.App. S.D.2001) ("The standard of review mandated by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), for court-tried cases is applicable in both actions at law and in equity."). *Murphy* specifically provides "that in 'suits of an equitable nature ... the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *McBee v. Gustaaf Vandecnocke Revocable Trust,* 986 S.W.2d 170, 173 (Mo. banc 1999) (quoting *Murphy,* 536 S.W.2d at 32). That is the standard that must be applied to this case.

3. "Compelling considerations of common sense and public policy support the principles that the presumption of validity of a marriage is one of the strongest known to the law[,] ... that the burden of proving the invalidity of a marriage rests upon him who asserts such invalidity and, that a marriage will not be declared invalid except upon clear, cogent and convincing proof." *Forbis v. Forbis,* 274 S.W.2d 800, 806 (Mo.App. S.D.1955) (internal citations omitted).

intent that the representation be acted upon by Husband; (6) Husband's ignorance of the falsity of the representation; (7) Husband's reliance on the truth of the representation; (8) Husband's right to rely on the representation; and (9) that Husband sustained consequent and proximate injury. *Charley v. Fant*, 892 S.W.2d 811, 812 (Mo.App. W.D.1995). Moreover, " '[p]ublic policy demands that integrity of the marriage contract be preserved so far as possible, and fraud necessary to avoid a marriage must be such as is deemed vital to the marriage relationship.' " *Woy*, 737 S.W.2d at 772.

In its judgment, the trial court found that Wife's representations as to Devin's paternity were not material to Husband's decision to marry her and that Husband would have married her even if he had known that those representations were false. In one of his points on appeal, Husband contends that these findings are not supported by sufficient evidence and are against the weight of the evidence.

■ Husband notes that he testified at trial that he would not have married Wife if he had known that he was not Devin's father and contends that the trial court was required to accept that testimony as true. In making this assertion, Husband disregards our standard of review, which requires this court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and to disregard all evidence and inferences to the contrary. *Stuckmeyer*, 117 S.W.3d at 690. "We defer to the trial court where there is conflicting evidence, and will affirm the judgment even if there is evidence which would support a different conclusion." *McAllister v. McAllister*, 101 S.W.3d 287, 290 (Mo.App. E.D.2003).

■ Because the trial court is in a better position to assess such factors as sincerity, character, and other intangibles that are not apparent in a trial transcript, we must defer to the trial court's determinations related to the credibility of the witnesses. *Id.* at 290–91. " 'The trial judge has absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court, and its findings on witness credibility are never reviewable by the appellate court.' " *Id.* at 291 (quoting *Milligan v. Helmstetter*, 15 S.W.3d 15, 24 (Mo.App. W.D.2000)). "The trial court is free to accept or reject all, part, or none of the testimony of a witness. And, it may disbelieve testimony even when it is uncontradicted." *Id.* (internal citations omitted).

Accordingly, the trial court was not required to accept Husband's own self-serving testimony that he would not have married Wife but for her representations related to Devin's paternity. Indeed, the overall gist of Husband's testimony appears to have been that he would never have seen Wife again after their one-night-stand if it had not been for her calling and telling him that he had a child and that the marriage was, therefore, the result of that representation. Such testimony does not establish that Husband relied upon the representations regarding Devin's paternity in deciding whether to marry Wife, only that it played a part in his decision to begin a relationship with her.

■ Sufficient evidence in the record supports the trial court's determination that Husband would have married Wife regardless of the representation as to Devin's paternity. Wife testified that Husband was crazy about her and that she was certain that he would have left his girlfriend and had a relationship with her regardless of Devin's paternity. Husband admitted on cross-examination that, during the two-year courtship the couple had between Wife's initial phone call and their

marriage, he fell in love with Wife. In addition, nine months before their marriage, Oralin, who is undisputedly Husband's child, was born. The trial court could reasonably have inferred that Oralin's paternity would have been sufficient to cause Husband to marry Wife.[4] Furthermore, testimony from both Husband and Wife reflects that Husband had questions about Devin's paternity prior to marriage, that he married her anyway, and that he subsequently adopted both children.

Based upon the foregoing testimony, the trial court could more than reasonably have found that Husband would have married Wife regardless of Wife's representations related to Devin's paternity. Such a finding is supported by sufficient evidence and is not against the weight of the evidence. Point denied.

Having determined that this ground for the trial court's denial of Husband's request for an annulment is not erroneous, we need not address Husband's remaining points related to the trial court's other grounds for its decision.[5] *See Eckhoff,* 71 S.W.3d at 622 (noting that this court must affirm the trial court's judgment if "cognizable under any theory").

The judgment is affirmed.

All concur.

---

4. "[A]ny fact issue upon which no specific finding is made shall be considered as having been found in accordance with the result reached." *McAllister v. McAllister,* 101 S.W.3d 287, 290 (Mo.App. E.D.2003).

5. We gratuitously note that the record does contain evidence supporting the trial court's other factual findings. Wife testified that she sincerely believed, from the time she called Husband until well into the marriage, that, based upon Devin's physical characteristics, Husband was Devin's father. Furthermore, Wife testified that the reason she had called Husband was to obtain a family health history in case Devin had need of it in the future and to let Husband know he had a son. She specifically testified that she had no expectations as to how Husband would act upon hearing about Devin.