**Harold E. MEADOWS Jr., Appellant,**

v.

**Janet L. MEADOWS, Respondent.**

**No. SD 30426.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 11, 2011.

Harold E. Meadows, Jr., Bonne Terre, pro se.

No brief filed for Respondent.

ROBERT S. BARNEY, Judge.

Harold E. Meadows, Jr. ("Husband") appeals the "Judgment and Decree of Annulment of a Marriage" entered by the trial court in favor of Janet L. Meadows ("Wife").[1] Husband, who was incarcerated at the time of the marriage and throughout this appeal, appears before this Court *pro se* and asserts four points of trial court error. We affirm the judgment of the trial court.

Viewing the record in the light most favorable to the trial court's judgment, *Blair v. Blair*, 147 S.W.3d 882, 885 (Mo. App.2004), the record reveals that while Husband was serving a life sentence in prison without the possibility of parole he met Wife, who was a social worker for the State of Missouri, and they were married inside the correctional institution on September 22, 2006. During their marriage, Husband told Wife that he had applied for clemency from the governor of Missouri; however, Wife believed no such request was ever made. According to Wife, "about a year after they were wed she stopped visiting [Husband] because of his false statements to her."

On January 26, 2009, Husband filed his "Petition for Dissolution of Marriage" and Wife countered with her "Counter–Petition for Annulment or Alternatively for Dissolution of Marriage." On July 23, 2009, Husband filed a "Petition for a Writ of H[a]beas Corpus Ad Testificandum Duces Tecum" in which he requested he be allowed to attend the hearing on these petitions which was to be held on September

1. Wife has not filed a brief in this matter.

8, 2009. On September 8, 2009, the matter was called for trial. The trial court denied Husband's request for a writ of habeas corpus at that time, noted his "fail[ure] to appear," and "denie[d] all relief requested by [Husband]" in his petition for dissolution. In support of her petition for annulment, Wife testified she had had no contact with Husband outside of the correctional facility, that she had no "conjugal visits" with Husband, and that the marriage was never consummated. She related that prior to her marriage to Husband he had "convinced [her] that he was going to be released ... in approximately a year and a half to two years." He told her that he "was going to be sending information to the governor asking for clemency and he had been saving money to have the ex-governor ... do that for him." She related this never occurred although it was part of the inducement which led her to marry him. Wife maintained that "because of the fact that [her] marriage was never consummated and because [she was] induced by his misleading promises about getting clemency ...," her marriage should be annulled. Based on the foregoing evidence, the trial court found against Husband and determined the parties' marriage "was induced by fraud and was never consummated and therefore an annulment is just and proper." Accordingly, the trial court entered its decree annulling the parties' marriage, setting "aside any and all possessions that [each] party may possess real, personal, and tangible or intangible, to be each parties separate property hereafter." This appeal by Husband followed.

 In this court-tried case, appellate review is governed by Rule 84.13(d)[2] and the principles set out in *Murphy v. Car-*

*ron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Blair,* 147 S.W.3d at 885. Accordingly, " '[t]he judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declarès or applies the law.' " *Blair,* 147 S.W.3d at 885 (quoting *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo.App. 2002)). "In making these determinations, this Court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Id.*

Husband's first and third points relied on are based on the trial court's denial of his request for a writ of habeas corpus ad testificandum duces tecum. It is through this process that he, as a prisoner, sought to personally appear at his dissolution of marriage hearing. We review these points seriatim. In his first point relied on, Husband asserts the trial court abused its discretion in waiting until the day of his hearing to deny his application for a writ of habeas corpus ad testificandum, thereby denying him the right to "full and fair access to court." In his third point relied on, Husband asserts trial court error in "not allowing" him to appear at trial because he was denied the right to cross-examine Wife, as guaranteed by section 491.070.

 In our review of Point I, we note with regard to prisoner access to the courts, that the Supreme Court of Missouri in *Call v. Heard,* 925 S.W.2d 840, 846 (Mo. banc 1996), observed that there is "a constitutional right of access to the courts." "However, this right of access is not a right to perfect access; constitutionally sufficient access can be afforded by

---

**2.** All rule references are to Missouri Court Rules (2010). Statutory references are to

RSMo 2000, unless otherwise set out.

means other than personal appearance." *State of Washington ex rel Lewis v. Collis*, 963 S.W.2d 700, 704 (Mo.App.1998). "The right of access does not automatically encompass a right to be present in person at trial." *Id.* It is settled law that " 'absent a countervailing state interest of overriding significance, prisoners must be afforded meaningful access to the courts and an opportunity to be heard.' " *Beckwith v. Giles*, 32 S.W.3d 659, 663 (Mo.App.2000) (quoting *State ex rel. Kittrell v. Carr*, 878 S.W.2d 859, 862 (Mo.App.1994)) (emphasis omitted); *see also Call*, 925 S.W.2d at 846. With that being said, "it is also equally well[-]established that a prisoner has no absolute right to appear personally in a civil proceeding." *Beckwith*, 32 S.W.3d at 663 (emphasis omitted); *see Muza v. Missouri Dept. of Soc. Servs.*, 769 S.W.2d 168, 176 (Mo.App.1989). This is even true in the situation where the prisoner is requesting to appear "personally in a dissolution proceeding in which he is the plaintiff." *Kittrell*, 878 S.W.2d at 862; *see also In re Marriage of Burnside*, 777 S.W.2d 660, 664 (Mo.App.1989). Furthermore, without specific authority granted by rules, statutes, or case law, a prisoner is not "entitled, as a matter of right, to the appointment of counsel." *Lewis*, 963 S.W.2d at 705. Generally, "[p]arty litigants to civil proceedings have no constitutional or statutory right to the appointment of counsel." *Id.* In the instant litigation, none of the issues presented involve the possible loss of Husband's liberty requiring the appointment of counsel, particularly in the case of an indigent litigant. *See Fitzpatrick v. Hoehn*, 746 S.W.2d 652, 654 (Mo.App.1988). "Moreover, it is well-established that constitutionally sufficient access can be afforded by means other than the live presence at trial of the person in question." *Call*, 925 S.W.2d at 846. Therefore, when examining whether a prisoner has a "constitutional right to appear personally in a civil matter ... [we look to] whether there are any reasonable alternative means by which the prisoner may be heard and thus obtain meaningful access to the court." *Beckwith*, 32 S.W.3d at 663; *see Kittrell*, 878 S.W.2d at 863.

> The legislature has provided a variety of alternatives for securing prisoner's rights to access to the courts. In Missouri, prisoners can testify by conventional deposition or by videotaped deposition or by closed circuit television, and in some instances, upon a prisoner's request, a trial judge may, in his or her discretion, conduct a bench trial within the prison in cases where the prisoner is a party. Only where there are no reasonable alternatives to access the court and a substantial and irreparable prejudice will result from the failure to attend the proceedings may personal attendance be required as a matter of due process.

*Beckwith*, 32 S.W.3d at 663 (internal citations omitted); *see* § 544.275.

> In 1995, the General Assembly amended [section 491.230.2] to permit an inmate who is a party to a civil proceeding to attend a trial when the trial court determined that the inmate would be 'substantially and irreparably prejudiced by his failure to attend a trial on the merits in the civil proceeding.'

*State v. Scott*, 933 S.W.2d 884, 886 (Mo. App.1996) (quoting § 491.230.2). "By its enactment of [section] 491.230.2, the legislature has indicated in the strongest possible terms that prisoners should not be permitted to leave the prison to appear in civil cases." *Id.* "Moreover, due process is not implicated in the absence of a showing that alternative means are inadequate to secure meaningful access to the courts." *Id.*

■ "The granting of a writ of habeas corpus ad testificandum to appear in a civil proceeding lies within the discretion of the trial court, which should 'require strict proof of the materiality of the testimony and the necessity of the attendance of the prisoner as a witness.'" *Beckwith*, 32 S.W.3d at 663 (quoting *Laws v. O'Brien*, 718 S.W.2d 615, 618 (Mo.App.1986)); *see* § 491.230.2(2).[3] "Such proof would then be balanced against the [S]tate's interest in economy, convenience and security." *Kittrell*, 878 S.W.2d at 862.

■ Here, it was Husband's burden to demonstrate he was denied meaningful access to the courts or that he was "'substantially and irreparably prejudiced by his failure to attend'" his hearing. *State v. Christian*, 182 S.W.3d 240, 243 (Mo.App. 2005) (quoting § 491.230.2(2)). The record shows Husband first filed his petition on January 26, 2009. Even as a *pro se* litigant, "[h]e is held to the same standard as a licensed attorney." *Lewis*, 963 S.W.2d at 705; *Mills v. Mills*, 939 S.W.2d 72, 74 (Mo.App.1997). The hearing in this matter took place on September 8, 2009.[4] Husband merely set out in his writ request that "the presence of [Husband] with his legal documentation be produced at this scheduled hearing." The record is not clear as to whether in keeping with the statutory requirement of section 491.230.2(2) Husband provided notice to the Department of Corrections of his request. Furthermore, on its face Husband's writ request did not include any allegations as to the materiality and necessity of his in-person testimony. Now, in this appeal, Husband does not indicate he lacked an adequate alternative to appearing personally in court, and the record does not indicate he presented this issue to the trial court in any post-trial motion. *Christian*, 182 S.W.3d at 243. Given the totality of the facts presented, including the fact that Husband was serving a life sentence without the possibility of parole, and given the legislative mandate of section 491.230.2, we cannot say the trial court abused its discretion by its denial, albeit tardily, of the issuance of its writ of habeas corpus ad testificandum for Husband's personal appearance at his hearing in Wayne County.[5] Indeed, Husband can be faulted because the record reveals he had sufficient time before his hearing to seek alternative methods to present the merits of his case, as set out in *Beckwith*, 32 S.W.3d at 663; *Call*, 925 S.W.2d at 846; and *Scott*, 933 S.W.2d at 887 n. 2. Furthermore, Husband was not deprived of due process because he failed to show that alternative means of presenting his case

3. Section 491.230.2 states that
[n]o person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party, except when:
(1) The offender is a respondent in a chapter 211 proceeding to terminate parental rights ... or
(2) The offender is a party to the civil proceeding and the court finds that the offender will be substantially and irreparably prejudiced by his failure to attend a trial on the merits in the civil proceeding. In such cases the trial judge *may* issue a writ of habeas corpus ad testificandum to an offender only after the department of correc-

tions has been notified and allowed fifteen days to file written objections and been granted an opportunity to appear and make an oral presentation in opposition to the offender's appearance on the basis of security considerations.
(Emphasis added.)

4. Despite his incarceration, he waited until July 23, 2009, to file his petition for writ.

5. This determination should not be taken as a hard and fast rule that there is no abuse of discretion when the trial court refuses the issuance of a writ of habeas corpus ad testificandum on the day of trial.

were *inadequate* to secure meaningful access to the courts. *Christian,* 182 S.W.3d at 243; *Burton v. Flowers,* 14 S.W.3d 608, 609 (Mo.App.1999). Point I is denied.

Husband also maintains in Point III that the trial court erred in denying his request to appear at trial because such a ruling violated section 491.070 and denied him the right to cross-examine Wife.[6] This point is largely disposed of by our prior discussion of Point I. We have already found that the trial court did not abuse its discretion in denying Husband's request for a writ of habeas corpus ad testificandum to compel his appearance at trial. "Suffice it to say, once again, that the right of access [to the courts] is satisfied by the presence of sufficient alternatives to personal appearance." *Call,* 925 S.W.2d at 847. Husband's rights to cross-examination were waived as a result of his failure to seek in a timely manner alternative methods to present his case other than by personal appearance. Point III is denied.

■ In Point II, Husband urges trial court error in "its misclassification of marital and non-marital property and the allocation of all property to [Wife], in violation of [section] 452.330.1 . . . ."

Section 452.330.1 sets out, in part, that

[i]n a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the

court deems just after considering all relevant factors . . . .

An examination of the trial transcript and the record in this matter clearly shows that this case proceeded to trial solely on Wife's counter-claim for an annulment. On its face, section 452.330.1 applies only to dissolution or legal separation proceedings, such that the trial court was not required to make any findings as to the marital or non-marital nature of the parties' property. In our research, we have been unable to find any case in Missouri where section 452.330.1 has been applied in the context of an annulment proceeding. In looking at other jurisdictions we find that "[m]ost courts have held that the property rights of litigants in an annulment proceeding are only those attached to persons in an individual capacity and are not the same rights usually affiliated with a husband and wife in a divorce proceeding." *Liming v. Liming,* 117 Ohio App.3d 617, 691 N.E.2d 299, 301 (1996). Contrary to Husband's assertions, it is our view that the trial court did not misclassify or improperly allocate the parties' properties contrary to the provisions of section 452.330.1, because this foregoing statutory provision does not pertain to annulments. Point II is denied.

■ In his fourth point relied on, Husband maintains error in the trial court's failure to "make findings of fact and conclusions of law on all claims set forth in [his] petition for dissolution of marriage, pursuant to Rule 73.01(c) . . . ."

Rule 73.01 provides that "[i]n cases tried without a jury or with an advisory jury: (3)[t]he court shall render the judgment it thinks proper under the law and the evidence." It further states that

---

**6.** Section 491.070 states in pertinent part that "[a] party to a cause, civil or criminal, against whom a witness has been called and given some evidence, shall be entitled to cross-examine said witness . . . ."

[i]f a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

Husband complains that the trial court failed to make findings of fact and conclusions of law under this rule; however, Husband neglects the language in the rule which states that the trial court "may" make such findings on its own volition or "if requested by a party...." Rule 73.01(c). Neither Husband nor Wife made any such request to the trial court. Manifestly, the court was not required to make such a determination *sua sponte.* The trial court did not err in failing to incorporate findings of fact and conclusions of law into its decision. Point IV is denied.

The judgment of the trial court is affirmed.

LYNCH and BURRELL, JJ., concur.